[No. 33101.    Department Two.    December 14, 1954.]

PAUL A. THOMPSON, *Appellant*, v. BERNADINE LOUISE THOMPSON, *Respondent*.[1]

*Parr & Baker* and *Pebbles & Swanson*, for appellant.

*O'Leary, Meyer & O'Leary*, for respondent.

SCHWELLENBACH, J.—This is an appeal from an order modifying the custody provisions of a divorce decree.

October 31, 1944, Paul A. Thompson obtained an interlocutory order of divorce from his wife, Bernadine Louise Thompson. Prior to the divorce, the parties agreed that their two children, Paula Joanne, aged three years, and Robert Edward, aged one year and three months, be placed with Mrs. Kirk Townsend, the husband's sister. The interlocutory order awarded the custody of the children to the father with right of visitation in the mother, "and that plaintiff's sister, Mrs. Kirk Townsend, shall have the actual physical custody of the two minor children."

After the divorce, the mother, then twenty-three years of age, went back and attended the Olympia High School, where she was graduated with the Class of 1945. She then worked as a waitress in Olympia, Seattle, and northern

[1]Reported in 277 P. (2d) 734.

California, until April 6, 1951, when she went to Petersburg, Alaska. She worked there as a waitress for a few months. She married Arne Trones September 27, 1951, and they still reside there. Mr. Trones is engaged in the commercial fishing and construction business, from which his annual net income approximates eight thousand dollars. The couple take part in community activities and are favorably thought of and well liked. They own their own home. March 11, 1954, Mrs. Trones petitioned the court to modify the divorce decree by changing the custody of the children to her.

The father is somewhat of a drifter. For a time he was confined in the Eastern State Hospital and later in the Western State Hospital at Steilacoom. There was evidence to show that he is addicted to the use of intoxicating liquor. He works from time to time at his trade as a carpenter. For awhile he paid the Townsends fifty dollars a month for the support of the children and, when not employed, performed labor on the Townsend home. However, he spent considerable time in California. The petition for modification was served on him in California, where he had then been for two years. Upon being served, he immediately returned and has since resided with the Townsends.

The hearing on the petition commenced June 7, 1954. Several witnesses, including business men, public officials, school teachers and neighbors testified to the good character of Mr. and Mrs. Trones, their industry, and their ability to provide a good home for the children. The evidence clearly supports the court's finding No. IV:

"The court further finds that petitioner is a fit and proper person to have the care, custody and control of her said two minor children and is now able to furnish them with a good home at Petersburg, Alaska; that petitioner and her present husband are happily married, and that Arne Trones is willing and anxious to have petitioner's two minor children live with them; that petitioner and her present husband live alone; that petitioner's present husband has an earning capacity of approximately $8,000.00 a year, is self-employed steadily in the construction business, and that part of his income comes from commercial fishing; that the parties own

a fishing boat, and in addition to their home have five acres at Vashon Island in the State of Washington; that the father of said two minor children, the plaintiff above named, was residing in the State of California, at the time this petition was filed and served; that said plaintiff contributed to the support of said children with fair regularity following the granting of said divorce, and contributed very little during the last few years; and that part of the time since the divorce plaintiff was an inmate of the Eastern State Hospital and Western State Hospital of the State of Washington; that plaintiff following the institution of this proceeding returned to the home of his sister, Mrs. Kirk Townsend, in Thurston County, Washington, where he now lives, and is regularly employed as a carpenter; that petitioner is now able to furnish children with a good home, and support and educate them properly; and the court finds that it is for the best interests of said children that said interlocutory and final decrees of divorce be modified so as to grant the petitioner the care, custody and control of said two minor children."

The children testified at the hearing. Although they liked their mother and Mr. Trones, they both stated that they did not want to go to Alaska and that they wanted to stay with their aunt at Boston Harbor. They admitted that their aunt had talked to them several times about the case, and had told them that they would be called to testify as to their wishes, but denied that she had attempted to influence them as to what their testimony should be.

The court ordered that the children spend the rest of the summer with their mother in Petersburg, so that they might become better acquainted with her, and that they be returned before September 1st in order to give them an opportunity to get ready for school at Boston Harbor. The court continued the matter until after their return, when it would then hear their testimony and make further and appropriate orders. The children went to Alaska, and upon their return another hearing was held on September 7th. At that hearing, the children were positive that they did not wish to leave the Townsends and live with their mother in Alaska. In fact, their attitude was quite antagonistic. The aunt had written to them at least once a week, usually

more often, telling how much the Townsends had missed them. She also telephoned them at least three times. The children admitted that before they left for Alaska they had made up their minds that they would not like their new surroundings, and that they would so tell the judge upon their return.

At the conclusion of the hearing, the court stated:

"Well, I cannot help but to feel that the recent decision of the Supreme Court in a case that is most similar to this one in many respects is definitely controlling. I feel that that is a pronouncement of the law of this State and that the Court is bound by it. If the law were not so clearly enunciated by our Supreme Court and the matter were more somewhat in the discretion of the Court, possibly a different result would be reached. Frankly, I think if the matter were just strictly within the discretion of this Court and had the Supreme Court not passed upon it, that in order to avoid the upset of a sudden transfer that I might consider some method of doing this by stages, giving visitations up north and finally going up there, and giving some regard, some consideration to the wishes of the children, but since the recent decision of the Supreme Court, I just don't feel that this Court can rightly do anything but to follow the established law of the State. It is so clearly stated now that I feel that it is the duty of this Court to follow it. . . ."

The court then entered the order modifying the decree by changing the custody of the children from the father to the mother.

It was agreed that Mrs. Trones would pick up the children at the Townsend home on September 10th at six o'clock p. m. She made plane reservations for the children and herself for the following morning. When she arrived at the appointed hour, she found the children dressed and their suitcases packed for the trip. She placed the suitcases in the car and returned to the house. The children then went into a tantrum and refused to go. They became very emotionally upset, and the boy threatened to run away. As a result, the children are still here. In justice to Mrs. Townsend, she told the children to go, but would not use force to compel them to comply with the court's order.

The recent decision to which the court referred was *In re Crozier*, 44 Wn. (2d) 901, 272 P. (2d) 136. The question in that case was whether or not the juvenile court had jurisdiction over a minor who was not a dependent child. It was a contest between the natural parents and a stranger who wished to adopt the child. The *Crozier* case was not intended to be and is not authority for a rule which would take from a trial judge the discretion which must of necessity exist in him over the custody during minority of children of divorced parents.

Our understanding of the trial judge's ruling is this. He was satisfied from the record that the mother of the children should prevail in her application to modify the divorce decree as to custody of the children. She was well established. She was a fit and proper person to have their custody. She and her husband were morally and financially able to provide a proper home for them. The father was not stable. It did not look as if he would ever be able to assume the proper role of a parent and custodian. It would be for the best interests of the children to give their custody to the mother. The judge's mind was fully made up as to that issue. But he wished to save the children from the shock of uprooting them from the home where they had lived for ten years—the only home they had ever known—and where they had received tender and loving care. So he wanted to do this "by stages, giving visitations up north and finally going up there." That would have been a proper exercise of the court's discretion, having in mind its duty to consider the welfare of the children.

But the situation has entirely changed since that time. The children refused to go with their mother. They flew into a tantrum. They successfully thwarted an order of the superior court (not a very good lesson in civil authority for young children). We do not wish to usurp the discretion which the law places in trial courts in matters such as this. However, we do not see how the trial court, in the light of what has transpired since the issuance of its order, could do other, in the exercise of its discretion, than affirm its order of September 9th and order that the chil-

dren be placed immediately in the custody of the mother. Surely it would not be for the best interests of the children to keep them here in the realization that they would ultimately, in a matter of six months or so, be moved from the home which they have learned to love. Their welfare would best be served if they were transferred now. To quote the words of Shakespeare: "If it were done when 'tis done, then't were well It were done quickly: . . ."

We sympathize with the Townsends, who have grown to love these children as their own. This is just another example of the heartbreaks that usually result from broken homes. A similar situation arose in *Penney v. Penney*, 151 Wash. 328, 275 Pac. 710, wherein we said:

"The child is entitled to know and enjoy the father's love and care, to be brought up under the circumstances and conditions to which she was born and to have the love and society of brother and sister. The fostering care of a stranger, no matter how wise and kind, cannot fill the place of these. There is every reason to believe, even though the child's attitude might be hostile at first, that, in a few months or a year or two at most, she will fit as naturally into her father's home as if she had known no other; and she will then have the home memories to carry through life and hand down to her children. In other words, she will be a Penney, as she was born, with the memories and traditions of a Penney, and not a Mohr, whose traditions may be wholly foreign to those of the Penney family."

That case also considered the problem of a thirteen-year-old girl who had not been with either parent for ten years. We said:

"Under these conditions, the love and affection which have grown up between the child and those in whose care she has been for ten years, is not a controlling factor. Nor is the fact, if such should be the fact, that the strangers to the blood might be able to give her more pleasant and luxurious surroundings, better educational facilities and like advantages, a factor to be weighed against the father's rights, if he be a fit and proper person to have the custody of his own child."

The order appealed from is affirmed.

GRADY, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.